## HARRELL et ux. v. HILL COUNTY et al.
### No. 884.

Court of Civil Appeals of Texas. Waco.
April 17, 1930.

Rehearing Denied Oct. 23, 1930.

W. B. Harrell, of Dallas, and Collins & Martin, of Hillsboro, for appellants.

Wm. C. Morrow and John D. Abney, both of Hillsboro, for appellees.

BARCUS, J.

Appellee, Hill county, instituted this suit to restrain appellants from obstructing a second-grade public road in Hill county, known as Summerhill tap road No. 507. Appellants answered, claiming that said road as used was not where same had been originally located, and that it was on their land, and sued in trespass to try title; appellants' contention being that the road as used was about 25 feet over on their land, and that distance from the road as originally ordered opened. They further asked for personal judgment against the county judge and county commissioners for damages.

The cause was tried to the court and resulted in judgment perpetually enjoining appellants from obstructing the road as actually located on the land, and denying them a recovery on their cross-action in trespass to try title and for damages, except to the extent it awarded them judgment for the land with an easement in favor of appellee for the use of said land for public road purposes.

It appears that in 1890, Sanger Brothers and others owned the Hayes survey of one league and labor of land, and subdivided same for sale into various sized lots; lots 6, 7, and 8 being on the north side of the road in controversy, lots 10, 11, and 12 being on the south side thereof, lot 6 being directly north of lot 12, lot 7 being north of lot 11, and lot 8 being north of lot 10. In the original deeds there was nothing that tied lot 6 to lot 12. The deeds to lots 7 and 8 and the deeds to lots 10 and 11 called for a 30-foot road between said lots. As a matter of fact there was no road in actual existence between same, and no one connected with any of the land knew or recognized any road between said lots. In about 1900, McDuff owned lots 6 and 7 on the north, and J. S. Watson owned lots 12 and 11 on the south, and they built a division fence between their respective tracts of land. They placed said fence at said time, according to undisputed testimony, on what they recognized and agreed to as being the division line between their respective tracts of land. Thereafter all parties at interest cultivated their respective tracts of land up to said fence.

In 1913, H. W. Weaver purchased lots 6 and 7, and in 1916 he and J. S. Watson, who owned lot 12, with several other property owners and neighbors, petitioned the commissioners' court of Hill county to open a second-grade road, beginning at the southwest corner of lot 6, known as the Weaver land, and the northwest corner of lot 12, known as the Watson land, and running east on the division line between said respective properties; the exact language used in the petition and the order granting said road being: "Beginning in the public road leading from Grand-

view to Linity at northwest corner of a tract of land owned by J. S. Watson, and the southwest corner of a tract of land owned by H. W. Weaver; thence N. 60 E. on the south line of Weaver's tract and the north line of said Watson's tract, a distance of 1121 vrs., and ending at the Files and Grandview public road." Before H. W. Weaver would sign the petition to have said road opened, he required, and the neighbors paid him either sixty-five or ninety dollars for the 15 feet of land the road would take off the south end of his land. The commissioners' court granted the petition, and created a second-class road, as requested. The road was opened, making the center thereof the fence that had been built about 1900 by McDuff and Watson, and the road as thus opened had been constantly in use as a public road, same having been worked and controlled during said years by Hill county.

Appellants purchased lots 6 and 7 in 1922. Their deed did not call for any road between lots 6 and 7 on the north and 12 and 11 on the south. At said time, however, the road was actually on the ground and being used, and had been for some six years. In December, 1927, appellants had their land, lots 6 and 7, and the land on the south of said road, being lots 12 and 11, which at said time belonged to J. H. Lyle, surveyed, and, according to the report of the surveyors, the road as laid out and used was over on their land about 19 feet on one end and about 26 feet on the other end. After considerable correspondence and consultations with different members of the commissioners' court, in January, 1929, appellants attempted to build a fence on what the surveyors had told them was their south line, which would take within their land practically all of said public road. Appellee then brought this suit to enjoin appellants from so building said fence.

Appellants present a number of assignments of error and propositions, their main contention being that the description in the road, as originally petitioned for and granted by the commissioners' court in 1916, called for the 30-foot road that had been left by the original grantors in platting the Hayes survey between lots 6, 7, and 8 on the north and lots 10, 11, and 12 on the south, and that, since it appears from the evidence that said road as opened and established in 1916 did not conform to nor was it on said 30-foot strip, appellee was not entitled to the injunction granted, and neither was it entitled to have the road as actually on the ground maintained; their contention in this connection being that neither the pleading nor proof will support the judgment of the trial court. We have carefully studied the entire record, and do not agree with appellants' theory. From the undisputed evidence it appears that no road was left originally between said lots, and

none was recognized by any of the abutting landowners. On the contrary, it is shown without dispute that in 1900 the respective abutting landowners agreed on a common boundary line between said lots of land. None of the deeds describing lot 6 on the north and lot 12 on the south in any way referred to or suggested that there was a road between said respective lots. In 1918, lots 6 and 7 were conveyed as one tract by Weaver to Ingram, and after said date the land was transferred five different times as one tract, and no reference was made in any of said deeds to any supposed or alleged road on the south. Mr. Wright, the county surveyor of Hill county, in a letter dated December 27, 1928, stated that he had assisted Mr. Westbrook, the surveyor of Johnson county, in making the survey for appellants in 1927; that since said joint survey was made he had gotten the field notes of the two adjoining surveys, namely, the Holman and the Hayes, and that he had surveyed both appellants' land and that of Lyle, who owned lot 12 on the south, and that, from the survey he had made, the south line of appellants' land was identical with the north line of Lyle, who owned lot 12, and that from his actual survey no 30-foot road was left or provided for by the original grantors between said lots. The trial court found that the road actually on the ground and being used was identical with the original road ordered opened by Hill county.

Article 6704, subdivision 2, Revised Statutes, provides that a second-class road must be at least 30 feet wide. Our courts hold that, where a road is laid out by the commissioners' court as running with a certain designated line, said line will be deemed to be the center of the road, and that an equal width of land will be taken on each side thereof. Terrell v. Tarrant County, 8 Tex Civ. App. 563, 28 S. W. 367; Scaling v. Denny, 58 Tex. Civ. App. 279, 125 S. W. 351. The road in controversy called for the south line of the Weaver tract and the north line of the Watson tract, and Weaver and Watson, the respective landowners at said time, recognized a common boundary line, which had been so recognized for at least sixteen years. Our courts have further definitely held that, where the abutting landowners have agreed upon a common boundary line, and thereafter have had a public road opened on said common boundary line, they and their assigns are estopped from claiming as against the county that said road is not on the common boundary line. Alexander v. Schleicher County (Tex. Com. App.) 3 S.W.(2d) 75. Almost the identical question involved in this litigation was determined adversely to appellants' contentions in the case of Alexander v. Schleicher County, supra.

We have carefully examined all of appellants' assignments of error, and same are overruled. The judgment of the trial court is affirmed.